# SUPREME COURT.

## Jason W. Duguid and another agt. James Edwards, Jr., and another.

*Factors* or *commission merchants*, doing business in the ordinary way, that is, receiving property from the consignors from time to time, and making sales and collections in their own names, placing the proceeds to their own credit in their bank account, charging their commissions and payments made on account of the property—making remittances to and accepting and paying drafts of the consignors, are *not liable to arrest* in an action for moneys neglected to be paid over to the consignors, on sales of their property.

Such factors and commission merchants do not act in a "*fiduciary capacity*," within the meaning of the Code (§ 179, *sub.* 2), but sustain the relation of *debtor and creditor* to their consignors.

*Erie Special Term, November*, 1866.

MOTION to vacate order of arrest. The defendants were commission merchants, doing business in the city of Albany. The plaintiffs were manufacturers of flour in the village of Le Roy, and early in September, 1865, shipped to the defendants one hundred barrels of flour for sale. Six other shipments of one hundred barrels each, were made along at intervals, the last being received by the defendants December 4th, 1865. The defendants paid the freight and charges, and opened an account with the plaintiffs.

They made sales of the flour from time to time, charging their commissions and payments made on account of the flour, and crediting the proceeds of sales. They made remittances to the plaintiffs, and the plaintiffs drew upon them, in one instance at thirty days, and the defendants took up some of the paper of the plaintiffs payable in Albany. The defendants were doing a large business as factors or commission merchants for many other persons. Their sales of flour were generally on short credit. The sales and collections were in their own names, and the proceeds of sales of the property of the different consignors or owners, were intermingled and placed to their credit in their bank account. In short, the business was transacted by them in the mode

Duguid agt. Edwards.

usually pursued by factors or commission merchants in Albany and New York.

Some four hundred and forty-five barrels of the flour were sold in the usual way, prior to January 18th, 1866, and mostly prior to December. The defendants sent one hundred and fifty barrels to a commission house in New York, for sale, and when they failed in February, they had on hand one hundred and sixty-five barrels, which were delivered to the plaintiffs.

The net proceeds of the flour sold in Albany were $4,011.15, of which the defendants had paid all but $211.15.

It is alleged in the complaint that the flour was to be sold in *Albany*, and that such was the agreement between the parties.

It is also alleged that the defendants contrary to, and in violation of the agreement made, &c., in regard to the place of sale of the flour, and without the knowledge or consent of the plaintiffs, and with the intent to wrong, cheat and defraud the plaintiffs, fraudulently shipped to the city of New York, one hundred and fifty barrels of the flour, in the name and on the account, and as the property of the defendants, and that they procured an advance thereon, &c., which they applied to their own use, to the great injury and damage of the plaintiffs.

It is averred that this flour was worth $11.50 a barrel; it is then averred that the plaintiffs, by reason of the aforesaid wrongful and fraudulent acts of the defendants, have sustained damages amounting in the whole to $1,800, and they demand judgment for such sum, with interest, &c.

R. BALLARD, *for plaintiffs.*
C. B. SPRAGUE, *for defendants.*

MARVIN, J. The complaint is so drawn that I am in some doubt touching the intention of the pleader. That is, whether he intended to set forth two distinct causes of action, or only one cause. The first statement related to the four hundred and forty-five barrels of flour sold in Albany, the

net proceeds of which were $4,011.15, and of which the defendants paid $3,800, and "retained" $211.15, and "neglected and refused to pay the same, or any part thereof to these plaintiffs, although often requested so to do."

Then follows the statement of the sending of the one hundred and fifty barrels to New York, beginning "and these plaintiffs further allege," &c. The counsel for the plaintiffs now claims that there is but one cause of action; that it is for the avails of the flour received by the defendants, including that sent to New York, and appropriated by the defendants to their own use. In short, that the defendants being commission merchants or factors, are liable to arrest on account of any money received by them for the property of the plaintiffs, and which the defendants have not paid over, but have themselves used.

I do not think it necessary to decide here whether the complaint contains two causes of action, one on contract and the other for a tort, as it is entirely clear that the first statement relating to the $211.15 balance, shows a cause of action on contract; and if the defendants were not subject to arrest for this cause of action, the order must be vacated, whatever view may be taken of the other statement.

The question then is, were the defendants liable to arrest for a failure to pay over the money received for the flour sold at different times, they having used the money in their business? Is the case within the second subdivision of section 179 of the Code?

The first position of the counsel for the plaintiffs is, that the facts constituting the cause of action and authorizing the arrest are the same, and that in such a case the order will not be vacated upon the merits, unless the defendants make a case that would justify a non-suit on the trial. (*Frost* agt. *McCarger*, 14 *How. Pr. R.* 131, *and some other cases are cited.*) The rule is undoubtedly sound, but the question whether the facts stated in the complaint are such as to entitle the plaintiffs to an order for arrest, must be open to examination. In *Frost* agt. *McCarger*, it was held that the

Duguid agt. Edwards.

facts stated in the complaint did show a cause of action, in which the defendant was liable to be arrested.

After examining the cases cited by counsel, and some others, I have come to the conclusion that the defendants were not liable to arrest under the provisions of the Code referred to. By the Code, the defendant may be arrested in an action for money received "by any factor, agent, broker or other person, in a fiduciary capacity." It is not always easy to construe and apply the general language of a statute to the ever varying facts constituting causes of action.

Is it intended by the language here used, that all factors, agents and brokers, in actions against them for money received, should be liable to arrest? Or is it intended to qualify the liability by the words "in a fiduciary capacity," and thus limit the remedy by arrest to cases of special confidence and trust? Or are we to understand by *factor*, for instance, as here specified, one who sells the property of another, and receives the pay for such other person, simply, and nothing more?

MITCHELL, J., in *Goodrich* agt. *Dunbar* (17 *Barb.* 644), adopts the construction last suggested. He says : " the term ' in a fiduciary capacity,' tends to show what is meant by factor, agent, broker, being one in whom a trust is reposed, such as is usually reposed in those persons in their ordinary or regular business ; that is, a trust that they will sell, and immediately account for the balance, after deducting their commissions." He says that the agency to sell or collect, is the only one that the Code refers to. In the case before him, the consignee was to take charge of the ship, pay her expenses, and sell her, &c., and the court held that he was not liable to arrest; that the agency was more extensive than that contemplated by the Code ; that the plaintiff intended to trust the defendant as a debtor. A factor is an agent employed to sell goods or merchandise, consigned or delivered to him for that purpose, for a compensation called factorage or commission. (*Story's Eq.* § 33 ; *Russ. on Fac. and Bro. p.* 1.) Strictly it is no part of the business of a factor to advance money for his principal. If he does so in

paying freight and charges, or in advancing upon the property, he does it upon an agreement, express or implied, other than that arising from the fact that he is a factor.

In *Hall* agt. *King* (8 *How.* 298), Justice HARRIS applies the term "fiduciary capacity," to "factor, agent or broker." He held that an agent employed to collect money, assumes a special trust, and acts in a "*fiduciary capacity*," and that he is liable to arrest, if he appropriates to his own use the money collected; that the money when collected was the principals. He thought that the true criterion is to determine whether the specific moneys received, ought in good faith to have been kept and paid over to the employer, or whether the defendant upon receiving such moneys, had the right to use them as his own, holding himself accountable to his principal for the debt thus created. In the latter case he would not be liable to arrest, in the former he would.

In *Chapman* agt. *Forsyth* (2 *How. U. S. R.* 202), it was held that a factor who receives the money of his principal, is not a *fiduciary*, within the meaning of the bankrupt act of 1841. That act excepted debts which had been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other *fiduciary capacity*. In this case, the defendant as a factor, had sold the cotton of the plaintiff, and had failed to pay over the proceeds. This case is in point, in principle, if we qualify "factor" by the term "*fiduciary capacity.*" In this connection see *White* agt. *Platt* (5 *Den.* 269). The plaintiff placed notes in the hands of the defendant to collect, and he collected them and used the money. It was held that he acted in a *fiduciary capacity*, within the meaning of the act of congress. The case is distinguished from *Chapman* agt. *Forsyth*, the court remarking, "the case of a factor is, after the sale of the goods of his principal, one rather of implied than special trust. As long as the goods of his principal remain unsold in *specie*, they can be reclaimed by the principal, and will not pass to the factor's assignees in bankruptcy. But after the sale, the proceeds of the goods of his various principals pass into a general account, and it

Duguid agt. Edwards.

is never understood that the proceeds of the sales of goods belonging to each principal shall be kept especially set apart for such principal, but that the factor has permission to use such moneys as the exigencies of his business require."

These two cases show clearly the distinction between cases of special trust and cases where the obligation or liability springs out of a general business of a commercial character, in which confidence is placed, not only in the integrity of the person employed, but in his ability to respond for any damages arising from his breach of contract or duty. *See also Commonwealth* agt. *Stearns* (2 *Met. R.* 343), in which it was held that the money received by an auctioneer for goods sold by him is his own money. The court says, " from the very nature and course of proceedings in cases of sales by auctioneers and commission merchants, the money arising from the sale of the goods of one man, may be intermingled with that arising from the sale of those of another, and they often must be so intermingled, unless the principle shall be adopted that a separate place for safe keeping is to be provided for each separate employer or customer.

In my opinion, the defendants as factors, did not receive the proceeds of the flour in a *fiduciary capacity*, within the meaning of the Code. After the defendants received the money for the flour sold, the relation between them and the plaintiffs, was that of debtor and creditor, and so the plaintiffs must have understood. The defendants were much more than mere factors, adopting the strict definition of that term ; and the opinion of MITCHELL, *supra,* as to the meaning of *factor*, as used in the Code. They were engaged in large commercial transactions, requiring capital, judgment, discretion and skill. They paid charges upon property consigned to them ; in the present case freights and some other charges. These commercial factors or commission merchants, in Albany and New York, do the business of selling and collecting in their own names. The name of the owner of the property is seldom known. They require and employ large capitals of their own. They often make advances upon the property consigned to them for sale, and thus assume

heavy liabilities. They keep accounts in bank in their own names, and deposit the moneys received for the property of their principals, without distinction. They keep separate accounts with each consignor, charging for all payments made on account of the property, and for all advances, and they render their accounts, and pay balances from the general fund.

The consignors often, and perhaps generally, draw upon their consignees or factors, for the proceeds of the property, or for anticipated proceeds, drawing on time, such drafts being accepted and paid by the factors. In the present case, the plaintiffs drew one bill at thirty days, addressed to the defendants. It would be very difficult, if not impossible, for factors doing much business, to keep the funds of each man's property separate from the proceeds of all other property.

Such being the course of the business of these factors or commission merchants, it follows of necessity that the relation between them and the consignors of property, is that of *debtor* and *creditor*, for all the moneys received by the factors for property sold by them, and I may add, it is better that it should be so.

Suppose in this case the defendants had sold one hundred barrels of the flour, and received $1,000, and had placed the money in their safe, and it had been stolen or destroyed by fire, whose loss would it have been? If it was the money of the plaintiffs it would have been their loss. But no one will doubt that the defendants must sustain the loss. The reason being that the money was the money of the defendants, and not the plaintiffs. The money would not have been held by the defendants as bailors, but as debtors. (*See Commonwealth* agt. *Stearns, supra, p.* 349.)

In *Frost* agt. *McCarger* (*supra*), it was suggested that if the defendant lost the money, or it was stolen from him, as he claimed, this would be a good defense on the trial, he being a special agent to collect the money. I have not overlooked *Schudder* agt. *Shiells* (17 *How.* 420). This case, I think, can only be sustained upon the understanding that the plaintiff made the defendant (a commission merchant)

Duguid agt. Edwards.

in New York, his agent specially to sell the butter, and to remit to the plaintiff the money received for it. I can understand that a transaction between a consignor and a consignee, may be so special as to impose upon the latter a *fiduciary character* in the transaction. It does not appear in the case that there was more than one shipment of butter, and it does not appear that the defendant paid the freight, or any charges, or was at any expense on account of the butter. The case is decided upon the remarks of MITCHELL, J., to which I have already referred, and the court must have held that the defendant was one in whose integrity confidence was reposed, rather than in his pecuniary ability ; and the court put the decision on this ground. The defendant's duty was strictly to sell and remit, and nothing more. If the case was well decided, it is not in point in the present case.

If we construe the Code as authorizing the arrest of a factor in an action for money received, without the qualification " in a fiduciary capacity," we must limit the remedy to the case of one acting simply as *factor*, as defined in the books, and it must be a case where the action will be for money received to and for the use of the plaintiff. The action is to be for money received.

It must not be a case where the course of dealing between the parties is such as to show that credits were to be given, and that advances or payments were to be made on account of the property.

The order of arrest should be vacated.