## THE BOSTON CARPET COMPANY, RESPONDENTS, *v.* ALBERT JOURNEAY, JR., AND OTHERS, APPELLANTS.

*Principal and Agent—Factors selling on Commission—Accounts must show basis of Commissions.*

Where by contract the principal consigns to his factors goods to be sold on commission, sales to be guaranteed, and advances to be made, and commissions to vary according to the character of the customers whether first or second class, it is incumbent on the factors to inform their principals what are sold to first, and what to second class customers—and to so keep the accounts as to show what commissions are charged on each.

APPEAL from that part of a judgment of the Court of Common Pleas for the City and County of New York, rendered at General Term, on the 17th of February, 1862, which affirmed the judgment in favor of the Plaintiffs, entered on the report of a referee on the 2d of October, 1857, as to the residue thereof, after the remission by the Plaintiffs, under the order of the Court, of the sum of $1,328.73, parcel thereof.

In December of 1852, Joseph Crawshaw, a manufacturer of carpets at Roxbury, Massachusetts, made an agreement in writing with the Defendants, who were engaged in business in New York, by which he agreed to manufacture and ship carpets to them for sale on commission. The Defendants were to make advances thereon; and the agreement contained a clause as follows: "*Fourth.* That said firm of A. Journeay, Jr., & Co., shall guarantee all sales of said carpets which they may make, and shall keep all on hand covered by insurance against fire; and in addition to all charges for insurance, storage, drayage, and other customary charges with commission-merchants in New York, they shall be entitled, as a full compensation for their services, to a commission of six per cent. on the amount of all sales to customers of the first class, and upon the amount of all sales to customers of the second class an additional and further commission, so that the sales to customers of the second class shall yield and produce to the parties of the first

part as much, and no more, per yard, than the sales to customers of the first class; this additional premium being for the additional risk incurred, and for the longer period they may be obliged to wait for the receipt of the proceeds; it being also left to the said firm to determine who are the first and who are the second class of customers." Under this agreement the business was carried on with Crawshaw and his successors and assignees, the last of whom are the Plaintiffs, until September, 1853; the Defendants, from time to time, receiving goods, making advances, and rendering account sales. In rendering their accounts, the Defendants, in almost all instances, returned the sales at less prices than those actually obtained for the goods, and charged their commissions only at the rate of six per cent. The Plaintiffs, on August 9th, 1854, brought this action against the Defendants: First, for a balance of account; second, for the difference between the prices which they had obtained for carpets sold by them on commission, and the price at which they had, in their account sales, returned them as sold; third, for an amount which the Defendants had retained under claim that they had made allowances for short measure to purchasers of the carpets; and fourth, for the amount of the commissions which Defendants had charged on their sales, on the ground that the Defendants had been guilty of misconduct and fraud. The Defendants denied all misconduct and fraud; alleged that the short measurements for which deductions had been made in their accounts actually existed; that some of the carpets were sold to customers of the first class, and that in those instances, the exact price obtained was rendered in the account sales, while others were sold to purchasers of the second class and justified the return of the sales to them at the price for which sales were made to customers of the first class under the clause of the agreement which has been quoted. Upon the trial before the referee he found, among other things, that all of the sales were to customers of the first class, and the Plaintiffs recovered all four of their claims. On appeal to the General Term, the Court of Common Pleas held that the Plaintiffs were not entitled to recover the commissions which the Defendants had retained, and

adjudged that the judgment should be reversed, unless the Plaintiffs remitted the sum adjudged to them by the referee on account of the commissions, and the interest thereon; and the Plaintiffs having remitted such sum, the judgment as to the residue was affirmed. This appeal is from the judgment as affirmed after this deduction.

SCRUGHAM, J.—On the argument before us the Defendants did not insist that the referee erred in allowing the Plaintiffs to recover the amount which had been retained by the Defendants on account of the alleged deficiency in the measurements of the carpets consigned to them, but only contended that there was error in his decision that the Plaintiffs were entitled to recover the difference between the amount of the sales as returned and their amount as actually made.

The effect of the agreement for the consignment and sale of the carpets was to entitle the Defendants to commissions of six per cent. upon all sales to such purchasers as, in the agreement, are denominated customers of the first class, and, upon sales to such as are therein denominated customers of the second class, to the same commission, and no more, unless the prices obtained from such customers should exceed those obtained from those of the first class, in which case the Defendants were to be entitled to the excess, as additional commissions. On sales to customers of the first class, the Defendants were to account to the Plaintiffs for the whole price obtained, and were entitled to retain only their commissions and customary charges; and as the referee found as a fact that all the sales were made to purchasers of this class, the judgment cannot be disturbed, if there was any evidence to sustain this conclusion. The agreement provided that it should be left to the Defendants to determine who were the first, and who the second-class customers; and it is evident that it was the intention of the parties that this determination should be made known to the Plaintiffs as the sales were made, or in the schedules of sales required by the agreement to be furnished to them; for the amounts at which the Defendants were to account

for sales to customers of the second class were to be determined by the prices they obtained from those of the first class, and the correctness of the accounts could not be ascertained until such sales were declared. It was clearly the duty of the Defendants, as factors, to render to their principals true accounts of the prices obtained for their goods, whether sold to first or to second-class customers. The fact that by the agreement they became entitled, on sales to those of the second class, to any excess over prices obtained from first-class customers for similar goods, did not relieve them from declaring the prices at which the goods were so sold; for that excess was given to them as an additional commission, and should have been charged in the account as such. Such was the only correct method of stating the account as to sales to second-class customers; and as the account rendered contained no charge for additional commissions, but only claimed the percentage chargeable on sales to first-class purchasers, it appeared upon its face to be an account of sales to first-class customers only, and its rendition could properly be regarded as the declaration of the Defendants that all of the sales mentioned in it were made to customers of the first class. It is not necessary to refer to other circumstances which might be adduced to sustain the referee's decision that the sales were all to first-class customers, for, as enough has been stated to show that it was not entirely unsupported by evidence, it cannot be regarded as erroneous in law.

The judgment should be affirmed.

All concur.

Affirmed.

JOEL TIFFANY,<br>State Reporter.