THE GERMAN BANK, Respondent, *v.* JOHN H. EDWARDS et al., Appellants.

Plaintiff discounted certain time drafts drawn upon defendants, receiving with each, as security, a carrier's receipt for a lot of cheese consigned by the drawer to defendants. Each receipt was indorsed and delivered to defendants, upon acceptance by them of the accompanying draft, and upon their executing an agreement, that upon disposal of the property, they would apply the first proceeds to the payment of the draft; they to pay all freight charges and expenses without recourse to plaintiff. In an action to recover the amount of the drafts,—*Held*, that the arrangement did not create the relation of principal and agent, or any fiduciary relation between the parties; that they had a joint interest in the property and its proceeds, with the right of possession in the defendants, subject

to their obligations, to apply the proceeds in discharge of their liability to the plaintiff; that the rights of the plaintiff and the obligations of defendants rested wholly in contract, and the remedy of the former was confined to an action for its enforcement, and that therefore an order of arrest was improperly granted.

(Argued September 30, 1873 ; decided October 11, 1873.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, affirming an order of Special Term denying a motion to set aside an order of arrest.

This action was brought to recover the amount of five time drafts, drawn by the firm of Edwards & Buckland upon defendants, and discounted by plaintiff. Annexed to each draft was a carrier's receipt, properly indorsed, for a quantity of cheese consigned by Edwards & Buckland to defendants, at New York. Each draft was forwarded by plaintiff for acceptance, with accompanying receipt, and a letter directed to defendants, stating in substance that the property mentioned in the annexed bill of lading had been transferred to and was held by plaintiff as security for the acceptance and payment of the accompanying draft, and "upon the disposal of the said property you are hereby required to apply the first proceeds thereof to the payment of said draft, and upon the acceptance of said draft, the bill of lading covering the property mentioned, is placed in your custody for that purpose, you paying all freight charges and expenses thereon, and without recourse to the bank." Defendants accepted each draft, and wrote below the letter accompanying, the following :

"We accept the above voucher, and will comply with its provisions.

"J. H. & J. T. EDWARDS."

Whereupon the receipt was indorsed and delivered to them.

Defendants sold the cheese for more than sufficient to pay the drafts, but did not pay the same.

The complaint set forth most of the facts, and asked judg-

ment for the amount of the drafts, protest fees, etc.  Upon affidavits, setting forth the facts and alleging that defendants acted in a fiduciary capacity, an order of arrest was granted.

*A. Prentice* for the appellants.  The transaction was purely mercantile, and not one of a fiduciary character.  (*Sutton* v. *De Camp*, 4 Abb. [N. S.], 484; 1 Wait's N. Y. Pr., 621, and cases cited.)  The goods became defendants' property when they became debtors.  (*Chapman* v. *Forsyth*, 8 How. U. S., 202–208; *Bussing* v. *Thompson*, 15 How., 100; *Angus* v. *Dunscomb*, 8 id., 14; *White* v. *Platt*, 5 Denio, 273.)  Being owners they cannot be arrested as agents.  (*McBirney* v. *Martin*, 6 Robt., 502.)  Defendants were not obliged to hold the money received for the cheese as a distinct fund to pay the drafts.  (*Goodrich* v. *Dunbar*, 17 Barb., 644; *Stall* v. *King*, 8 How., 300.)

*Lewis & Gurney* for the plaintiff.  Plaintiff had a right to prescribe the terms upon which the cheese should pass to defendants.  (*Cayuga Co. Nat. Bank* v. *Daniels*, 47 N. Y., 631.)  Defendants received the cheese in a fiduciary capacity, and, upon conversion of the proceeds, were liable to arrest.  (Code, § 179, sub. 2; *Holbrook* v. *Homer*, 6 How., 86; *Strall* v. *King*, 8 id., 298; *Frost* v. *McCarger*, 14 id., 131; *Schudder* v. *Schiells*, 17 id., 420; *Ostell* v. *Brough*, 24 id., 274; *Dubois* v. *Thompson*, 25 id., 417; *Duguid* v. *Edwards*, 50 Barb., 288; *Grand Tk. R. R. Co.* v. *Edwards*, 56 id., 408.)

ALLEN, J.  A defendant may be arrested in the several actions and cases mentioned in section 179 of the Code, and included in the list are actions "for money received, or property embezzled or fraudulently misapplied,  *  *  *  by any factor, agent, broker or other person in a fiduciary capacity."  If the defendants were merely the factors, agents or brokers of the plaintiff, and occupied no other relation to it or the property, and had no other rights, and were under no other obligations than such as would result from that rela-

tion, no doubt could exist and no question would have been made as to their liability to arrest. (*Dubois* v. *Thompson*, 25 How., 417; *Ostell* v. *Brough*, 24 id., 274; *Schudder* v. *Shiells*, 17 id., 420; *Stoll* v. *King*, 8 id., 298; *White* v. *Platt*, 5 Den., 269.) In that case the action would be for the money received as such factor, agent or broker, and within the words of the statute, and not upon an independent undertaking and engagement. When the relation of principal and factor exists, the principal has at all times the right to direct and control the disposal of the property or reclaim it from the possession of the factor, and to demand at once the proceeds of any sale that may be made, or sue the purchaser for the purchase price, and the money becomes, instanter, upon its receipt by the factor, the money of the principal in place of the goods for which it has been substituted. The relation of the parties to each other and to the property which is the subject of the present inquiry, and the consequent liability of the defendants to arrest, depends upon the true interpretation of the agreement between them, and under which the property came into the possession of the defendants. The special compact and agreement of the parties, so far as it varies their relations from that of principal and factor, or consignor and consignee, must control in place of the ordinary rules of commercial law. The plaintiff, upon the discount of the several bills, with the receipts of the carrier, corresponding to and answering the purposes of the usual bill of lading, consigning the goods to the defendants annexed, properly indorsed, became the special owner of the property, entitled to hold it as security for the acceptance and payment of the bills. (*Cayuga Co. National Bank* v. *Daniels*, 47 N. Y., 631.) The bills were drawn by the general owner of the property on the defendant, in favor of the plaintiff, and were negotiable and were on time, that is, payable at a future day, some in one month and some in twelve days after their respective dates.

The carrier's receipts, called bills of lading in the written communication from the plaintiff to the defendants, which,

with the assent and agreement of the defendants to comply with its provisions, constitutes the agreement of the parties, came to the possession of the defendants with the right to take, hold and sell the property upon their acceptance of the bills, and consenting to the terms imposed by the plaintiff. The defendants, by the acceptance, became absolutely bound to pay the bills, irrespective of any sale of the property, and, if the property had been destroyed by fire or otherwise, they would have been liable upon their acceptance. By thus accepting the bills upon a transfer of the carrier's receipts, which was, in legal effect, a delivery of the property represented, the defendants acquired a special property in the consignments, and they were not merely the factors or agents of the plaintiff. The latter surrendered the property, its possession, control and right of sale, to the defendants upon a good consideration, and could not have reclaimed it; neither could the plaintiff have brought an action in its own name, upon a sale by the defendants, for the purchase price, as could a principal in the case of a sale by a factor or agent. But for the written agreement of the parties it would not be contended that, upon an acceptance of the bills by the defendants, and the transfer and delivery to them of the property against which the bills were drawn, or the carrier's receipts representing such property, the special property and interest of the plaintiff would not have been transferred to the defendants in exchange for and as an indemnity against the liabilities assumed by them. Such would have been the legal effect of the transaction. The terms and provisions of the written memorandum, by which the rights of the parties are to be judged, do not so vary the transaction in substance as to create the relation of principal and agent between the parties. The plaintiff carefully provided against all liability for the payment of the freight or other charges upon, as well as the expenses of the sale of the property. It came under no liability, either as a general or special owner, but devolved all upon the defendants. Neither did it assume any risk as to the safety, value or sale of the property. The bank washed its hands of all

chance of loss in the transaction in any contingency connected with the safe keeping or sale of the property. In place of the lien and special property in the produce consigned as security for its loan and advance, it had the acceptance of the bills by the defendants, and their agreement upon the disposal of the produce to apply the proceeds to the payment of the drafts. This but superadded, to the absolute engagements of the defendants to pay the bills, a promise to pay them from a specified fund, if such fund should be realized before the maturity of the bills. This gave the plaintiff an interest in and lien upon the property, and the avails of any sale thereof as security for the payment of the acceptances, and such interest or lien was capable of being specifically enforced; but this was not inconsistent with the special property of the defendants. The parties may be said to have had a joint interest in the property and its proceeds, with the right of possession in the defendants, subject to their obligations to apply the proceeds in discharge of their liability to the plaintiff. But this did not create the relation of principal and factor or agent, or create a fiduciary relation between the parties. The rights of the plaintiff and the obligations of the defendant rested wholly in contract, and the remedy of the plaintiff was by action to enforce its performance. This action is not to enforce the lien of the plaintiff on the specific funds, and if it were it would not be a case for an order of arrest. The action is upon the acceptances, and not for money received by the defendants as factors, or in any other fiduciary capacity. The demand for judgment is upon the bills, and for the amount due thereon, including interest and the expenses of their protest, and not for a specific sum of money, and the proceeds of the sale of property conveyed to the defendants for sale; and a recovery can be had without proof of a single extrinsic fact upon which it is sought to establish a fiduciary relation between the parties. There were no goods consigned to or received by the defendants for sale on account of the plaintiff. They were put in the possession of the defendants, and received by them for sale under a

special agreement, in consideration of the liabilities assumed by them and as their indemnity, and there are now no fiduciary relations between the parties to the action entitling the plaintiff to an order of arrest upon the cause of action stated in the complaint.

The orders should be reversed, and the motion granted, with costs.

All concur except Grover, J., not voting; Folger, J., concurring in result.

Orders reversed.