LINDSEY (UNITED STATES v.). See Case No. 15,603.

LINDSEY, The ANNIE. See Case No. 422.

LINEGAN (GARRETSON v.). See Case No. 5,251.

LINENS (UNITED STATES v.). See Case No. 15,604.

———

## Case No. 8,369.

### In re LINFORTH et al.

[4 Sawy. 370; [1] 16 N. B. R. 435; 1 San Fran. Law J. 199.]

Circuit Court, D. California. Nov. 22, 1877.

BUYER AND SELLER, NOT PRINCIPAL AND AGENT.

Where A. agreed to furnish goods to B., at schedule prices, less a certain discount, and B. was to pay all freight, storage, and other charges, and, at the end of every three months, was to settle for all goods sold by him or shipped from his warehouse, by giving his notes for the stipulated price, and, at the end of a year from the date of the agreement, to settle, if required, for all goods remaining on hand, *held*, that this arrangement created the relation of seller and buyer, and not that of principal and agent or factor; and that on the bankruptcy of B., A. could not recover from his assignees the proceeds of goods sold by B. and collected by them, or notes of purchasers of such goods in their hands as assignees.

[Cited in Hamilton v. Willing (Tex. Sup.) 11 S. W. 845; House v. Beak, 141 Ill. 300, 30 N. E. 1068.]

The petition in this case prayed that the court would order the assignees of the above bankrupts to pay to the petitioner certain moneys in their hands, being the proceeds of goods heretofore sold by the bankrupts, and also turn over certain notes and accounts for the unpaid purchase-moneys of other goods sold by them. No objection is made to the form of the proceeding. The goods were obtained, by the bankrupts, from the petitioner, under the following agreement: "Memorandum of agreement made this first day of June, 1876, by and between the Furst & Bradley Manufacturing Company of Chicago, Illinois, parties of the first part, and Messrs. Linforth, Kellogg & Co., of San Francisco, California, parties of the second part: Witnesseth, that the said parties of the first part agree to furnish to the said

———

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

parties of the second part such goods of their manufacture as they may, from time to time, order, delivered free on board cars in Chicago, Illinois, on the following terms and conditions, viz.: The Furst & Bradley Manufacturing Co. agree to allow Messrs. Linforth, Kellogg & Co. the following discounts from their present price-lists, dated Chicago, 1876, which are hereto attached; on sulky rakes, a discount of 33⅓ per cent.; on wheel cultivators, a discount of 33⅓ per cent.; on sulky plows, a discount of 33¾ per cent.; on Texas or southern plows, a discount of 25 per cent.; on common plows and other goods, 33⅓ per cent.; and further agree to give the said parties of the second part the exclusive sale of such goods as they may order, in sufficient quantities to supply the demand in the following described territory, to wit: The state of California, the state of Nevada, as far east as Elko—but not to include that place or tributary trade—the territory of Arizona, and the Republic of Mexico. The said parties of the second part agree to pay all freights, storage, and other charges, on the goods shipped to them by the said parties of the first part, and to sell no other goods of the same class than those manufactured by the Furst & Bradley Manufacturing Co. in the territory above named, and further agree to keep insured at all times, at their own cost and expense, such goods as they may have in store or warehouse, at the full list price, less 33⅓ per cent., for the sole benefit of the Furst & Bradley Manufacturing Co. The parties of the second part further agree to render an account of sales every three months, beginning with September 1, 1876, and to settle for all goods sold or shipped from their warehouse or store, by giving their note, payable in sixty days from the dates fixed for rendering accounts of sales, as provided. It is further agreed, on the part of Messrs. Linforth, Kellogg & Co., to settle for such goods as may be on hand June 1, 1877, by giving their note, with interest at the rate of ten per cent. per annum, payable in six months, from June 1, 1877, if so required by Furst & Bradley Manufacturing Co. The Furst & Bradley Manufacturing Co. further agree to allow an additional discount of one per cent. per month for all cash paid in advance of the times specified above. This agreement to go into effect June 1, 1876, and to continue during the year and up to June 1, 1877. Furst & Bradley Manufacturing Co.; Linforth, Kellogg & Co."

HOFFMAN, District Judge. In the case of Nutter v. Wheeler [Case No. 10,384], Lowell, J., observes: "It has been settled for a very long time that upon the bankruptcy of a factor his principal may recover of the assignees any of the goods remaining unsold, or any proceeds of such goods which the assignees themselves have received, or which remain specifically distinguishable from the mass of the bankrupt's property. The action may be brought at law as well as in equity, subject, of course, to the factor's lien for advances or commissions—and it makes no difference that the factor acted under a del credere commission, or sold the goods in his own name." For these positions, which are substantially those maintained by the counsel for the petitioners in the case at bar, the learned judge cites numerous authorities. I do not understand them to be controverted by the counsel for the assignees.

But the question presented in this case is not as to the rights of the assignee of a bankrupt factor as against the principal, but whether the relation of principal and factor existed as to the goods in question, or their proceeds, between the petitioner and the bankrupt. The same question arose under very similar circumstances in the case before Lowell, J., and it is discussed by him with characteristic vigor, clearness and learning. In that case it appeared that the defendants were in the habit of sending their manufactured goods to Gear, the bankrupt, and he sold them at such prices and to such persons, and on such terms as he pleased, not less than the trade prices fixed by the defendants. Whenever he sold any tools, and not before, he was to pay the defendants in thirty days the prices shown on the list, less an agreed discount. The defendants had the right to sell any goods which remained in his shop unsold, and he was permitted to sell any of their goods at the factory, and the defendants would then deliver them according to his order, and charge him with the trade price, less the discount. Instead of paying in thirty days, Gear would sometimes give his note for the balance due, and the defendants held one such note at the time of the bankruptcy. On this state of facts Mr. Judge Lowell held that the goods sent to the bankrupt, by the defendants, remained the property of the latter until sold, and that when a sale occurred the bankrupt became their debtor, at a fixed price, and was bound to pay at a definite time, and that the relation of the bankrupt to the consignor was that of a bailee, with power to sell as principal, but not that of agent or factor.

The authority chiefly relied on by Lowell, J., is Ex parte White, 6 Ch. App. 397. In that case the court, in its opinion, describes the bargain between the parties as disclosed by their course of dealing, as follows: "We will give you the goods; you shall be the sole person whom we supply in a particular district, and we shall not call upon you to pay until you have disposed of them. You are at liberty to sell upon your own terms. We have nothing to do with the persons with whom you deal, but we look to you to pay at our trade prices for the goods you sell. You must return the sales you have made up to certain times. We will give you

a certain credit, but when that is expired we look to you for the cash."

Under this agreement the court held that no relation of principal and agent subsisted between the parties; that the consignee of the goods was not acting in a fiduciary capacity, and that the proceeds of sales were his own moneys, and he was at liberty to deal with them as he pleased, and that the consignors of the goods had no right to follow them in the hands of bankers to whom they had been paid.

It will be noticed that this case is almost identical with the case at bar. By the agreement between the bankrupts and the petitioners the latter agreed to "furnish" the bankrupts goods of their manufacture, at a fixed price. The bankrupts were to pay all freight, storage, and charges on the goods shipped to them. They had the right to sell or dispose of them in any manner, and for such prices and on such terms as they chose, and were to pay, at the expiration of three months, a fixed price for all goods sold or shipped from their warehouse. They were not bound to render any account sales to their consignors. The agreement speaks, it is true, of an account sales to be rendered by the bankrupts, but this evidently means an account or statement of the articles sold or shipped from their warehouse, for which they were to pay the agreed price every three months. They were not bound to render any account of the prices obtained by them, or of the terms of sale. At the end of the year they were bound to pay, if required, for all goods remaining on hand. It is plain that this transaction in no respect resembles a consignment by a principal to a factor, of goods to be sold on commission. It is a consignment of goods to be paid for at a price agreed upon, and which bore no relation to the prices at which the consignees might sell, or the amounts they might be able to collect. A credit was given, but all goods sold or removed were to be paid for at stipulated periods, and all goods remaining on hand were to be paid for at the expiration of a year from the date of the agreement. The transaction was thus a sale on credit, and the petitioners can make no claim to the goods sold or removed from their warehouse by the bankrupts, or to their proceeds. The case is not affected by the circumstance that the bankrupts have, in pursuance of their agreement, given their notes for the goods sold by them, which notes the petitioners now hold. The latter may, if they choose, surrender these notes, and prove for the original debt. No question is made as to the goods remaining in the bankrupt's possession at the time of the bankruptcy. It is understood that the assignee has agreed to relinquish them to the petitioners, as it was found more advantageous to the estate to reduce the amount of the petitioners' claim by the amount of their con-

tract price, than to sell them at the present market rates, and admit the petitioners to prove for their whole claim.

As the assignee is in possession of all the assets to which the petition lays claim, no order will be necessary, except to deny the prayer of the petition.