### SPRINGVILLE MANUF'G CO. *v.* LINCOLN.

*(Common Pleas of New York City and County, General Term.* June 16, 1890.)

1. FACTORS AND BROKERS—DEL CREDERE COMMISSION.

   A *del credere* commission is earned when the guaranty is made, and not when the account is collected.

2. SAME—FORFEITURE OF COMMISSIONS—EMBEZZLEMENT.

   Goods were sent to a factor to be sold, the proceeds to be remitted "from time to time." The proceeds of goods thus sold were received by the broker, but he neglected to remit at once to his principal, and in the mean time he (the broker) became insolvent. *Held,* that the failure of the factor to remit was not equivalent to embezzlement, so as to deprive him of his right to commissions.

Case submitted on agreed statement.

Action by the Springville Manufacturing Company against Lowell Lincoln, as substituted trustee of John F. Plummer & Co.

Argued before LARREMORE, C. J., and BOOKSTAVER, J.

*Strong & Cadwalader*, for plaintiff.     *W. B. Hornblower* and *James Byrne*, for defendant.

BOOKSTAVER, J.    The Springville Manufacturing Company is a corporation organized under the laws of the state of Connecticut, and engaged in the manufacture of cloths and woolens.    Between the 1st day of January, 1886, and the 19th day of March, 1890, the firm of John F. Plummer & Co., of the city of New York, were engaged in business as commission-merchants, and on or about the 1st day of January, 1888, that firm entered into an agreement with the Springville Manufacturing Company, whereby the company was to ship and consign goods manufactured by them to said firm, as its factors, for sale for the account of the company; the proceeds of such sales were to be remitted from time to time, and prompt payment of all sales was guarantied by the firm.    As compensation for such services, it was agreed that John F. Plummer & Co. should receive a commission of 6 per cent. upon the sales made by the firm, which commission was understood to be made up of $3\frac{1}{2}$ per cent. for selling the goods, and $2\frac{1}{2}$ per cent. for guarantying prompt payment by the purchasers, and there was to be paid by the company an additional 1 per cent. for all other expenses except freight.    On the 19th of March, 1890, the firm of John F. Plummer & Co. executed a general assignment of its property to Jeremiah P. Murphy for the benefit of its creditors, which was duly recorded on the same day.    Between the dates of the agreement of the original parties and the date of the assignment the company from time to time shipped and consigned goods manufactured and owned by it to the firm, as its factors or commission merchants, for sale pursuant to that agreement, and proceeds of such sales were from time to time paid by the firm to the Springville Company.    At the date of the assignment, however, the firm had received and sold in its own name for the account of the company consigned goods to the amount of $160,439.89, no part of which had been remitted to the latter, and of which $111,971.42 had not been paid by the purchasers thereof, but was due or to become due from them.    The firm had collected $48,468.47, which they had appropriated to their own use, and had not paid to the company.    No advances had been made by the firm upon the goods or their proceeds.    The unpaid commissions upon sales amounted to less than the sum received by the firm.    The firm of John F. Plummer & Co. was, at the time of the assignment, largely insolvent.    The inventory by the assignee disclosed assets of the nominal value of $1,020,731.01, and of the actual value of $68,803.44, and liabilities to the amount of $877,605.32, including the amount of $48,-468.47 due the company as before mentioned.    After the execution of the assignment the Springville Manufacturing Company claimed the right to collect the unpaid amount of $111,971.42, whereof portions were paid by check or draft to the order of John F. Plummer & Co., and, in such instances, required the assignee to indorse and deliver such checks to the plaintiff under the power of attorney contained in the assignment.    The assignee refused to do so, claiming the right to deduct from such amounts the commission of 7 per cent. to which the firm of J. F. Plummer & Co. would have been entitled under the agreement.    On the other hand the company claimed that the firm having become insolvent, the guarantied commission was not chargeable, but only the commission for sale and expenses; and that whether or not the guarantied commission had been earned, all commissions should be offset and credited against the indebtedness of the firm to the company.    In order to bridge over the difficulty, an agreement was entered into bearing date the 26th of March, 1890, by which it was provided that the assignee might deduct from all collections made by him on account of such sales, the commis-

sions to which the firm would have been entitled if it had continued in business, and deposit them in the Manhattan Trust Company to be held subject to the determination of the right of the assignee to retain the same or any part thereof, or of the company to receive the same, or to offset the same against the indebtedness of the firm. Afterwards the assignee from time to time received moneys on account of such sales by checks, or the order of J. F. Plummer & Co. or otherwise, and deducted therefrom various amounts as commissions, at the rate of 7 per cent., and deposited them in the Manhattan Trust Company, in the city of New York, to the joint order of himself and the company. The amount so deposited is $2,648.43. On the 28th of April, 1890, this court at a special term discharged Jeremiah P. Murphy as assignee, and Lowell Lincoln, the defendant herein, was duly appointed substituted assignee, and qualified as such, on the 29th of April, 1890, by filing his official bond, which was approved by one of the judges of this court. On the 2d day of May, 1890, Murphy, with the assent of the Springville Company, assigned unto the present defendant all the title and interest which he, as assignee or individually, had in and to the said sum of $2,648.43, together with the power to collect and receive the same in the same manner, and subject to the same conditions, as he (Murphy) was subject to under the aforesaid agreement. This controversy is submitted on this state of facts for the purpose of determining the right of Lincoln, as substituted assignee of John F. Plummer & Co., or the Springville Manufacturing Company, to the moneys so deposited.

The first question submitted is as to the right of the assignee to any commission whatever. From the foregoing facts it appears that the firm of John F. Plummer & Co., before the assignment, had made sales to the amount of $160,439.89, and had collected $48,468.47, which they had not remitted to the plaintiff. On the argument it was virtually conceded that the $4\frac{1}{2}$ per cent. commission had been earned by the firm, but it was contended that the $2\frac{1}{2}$ per cent. for guarantied sales should not be allowed because the firm had become insolvent before the accounts were collected. But we think by the mere fact of making a sale the firm became liable as guarantor to the plaintiff, and that its subsequent insolvency in no way relieved the estate from that liability, and the plaintiff has a right to look to and to be paid the whole amount due it from the assigned estate, provided sufficient is realized therefrom to do so, or, if not, then to its *pro rata* share upon the whole amount, whether the money is collected from the parties to whom the sales were made or not. The infirmity of the plaintiff's argument is that it assumes that the *del credere* commission is not earned until the collection of the account or the payment of the account to the assignor. We think it is earned when the guaranty is made, not when it is performed. It is true that by their insolvency such a guaranty becomes of less value than it otherwise would have been, but that cannot alter the legal *status* of the parties. We are therefore of the opinion that the entire 7 per cent. commissions were earned, unless plaintiff's contention that the misconduct of Plummer & Co., in not remitting promptly the moneys collected by them and appropriating the same to their own use, deprived them of the right to any commission whatever.

There can be no doubt but that where a factor has been guilty of embezzlement, fraud, false representation, or other gross misconduct, he forfeits all claim to commissions. But it is not every such dereliction of duty that has such a penalty attached. In the statement of facts it is admitted that certain amounts had been collected by Plummer & Co. before its failure, and not remitted to the plaintiff, but appropriated to its own use. But we do not think that this is equivalent to embezzlement, as claimed by the learned counsel for the plaintiffs. If the plaintiff and Plummer & Co. stood in a fiduciary relation to each other, or a personal trust existed between them, then such appropriation would amount to embezzlement. But ordinarily the relation between a factor and his principal is not of a fiduciary nature, and does not in-

volve a personal trust, and this distinction has been repeatedly pointed out. *Merrill* v. *Thomas*, 7 Daly, 396; *Stoll* v. *King*, 8 How. Pr. 298; *Sutton* v. *De Camp*, 4 Abb. Pr. (N. S.) 483; *Clark* v. *Pinckney*, 50 Barb. 226; *Duguid* v. *Edwards*, 32 How. Pr. 254. In this case there is nothing to show that any personal trust existed, or that Plummer & Co. were bound to remit immediately upon collection the proceeds of sales made on plaintiff's account. On the contrary, it is admitted "that the proceeds of such sales" were to be "remitted to the said Springville Company from time to time." This we think negatives the idea of an immediate remittance, and authorizes the inference that it was justified in mingling the proceeds with other funds, and we do not think it possible to have carried on the business without so doing, unless the course had been pursued which was followed in the *Case of the Hockanum Co.*, *post*, 79, a decision in which will be announced herewith. Besides this the plaintiff, when it had it within its power to compel an instant compliance with its agreement, allowed the proceeds of sales to accumulate in Plummer & Co.'s hands, and, for that reason, we think it must be held to have acquiesced in such treatment of its funds. This case is not analagous to *Carpet Co.* v. *Journeay*, 36 N. Y. 384, for in that case it was held that the accounts rendered were in effect fraudulent, which is not claimed in this action. We therefore think that the firm of Plummer & Co. had earned their commissions. But such commissions were only a debt due from the plaintiff to Plummer & Co., as factors, for the payment of which the law gave a lien as additional security to the latter. In all other respects the commissions were subject to the incidents of an ordinary debt, including set-off, and payment of them can be properly made by setting off the amount of the commissions *pro tanto*, against the larger amount due by the firm to the plaintiff. An assignee for the benefit of creditors can obtain no greater right than his assignors had. In this case, had Plummer & Co. not made an assignment, and there had been an accounting between that firm and the plaintiff, there can be no doubt but that the latter would have been allowed to set off the commissions against the general indebtedness of the former to it; and where a set-off could have been enforced against the assignor, it will be directed against the assignee. A court of equity, especially where one of the cross-debtors is insolvent, will always interfere, setting off one debt against the other. *Schieffelin* v. *Hawkins*, 1 Daly, 289; *Francklyn* v. *Sprague*, 10 Hun, 589; *Coates* v. *Donnell*, 48 N. Y. Super. Ct. 46; *Littlefield* v. *Bank*, 97 N. Y. 581; *Bank* v. *Edwards*, 53 N. Y. 544; *Smith* v. *Felton*, 43 N. Y. 423. In the latter case the court says: "It is enough that justice and equity demand that the debts should be set off against each other, rather than the defendants should be made to pay the note, and rely upon the estate of an insolvent debtor for the payment of the debt due them." The learned counsel for the defendant contended that the right to commissions was a property right, and not a mere cause of action *in personam*. Even if this were so, the right is subject to set-off as above shown, and, under these authorities, we think it extremely doubtful whether Plummer & Co. could have made any conveyance which would have been effective to cut off plaintiff's right to set off such commissions against the firm's general indebtedness to it. But it is unnecessary to further discuss that question, as no such conveyance was attempted by them.

There is another reason why such set-off should be directed in this case. The proceeds of the sales of plaintiff's goods, unpaid at the date of the assignment, belonged to the plaintiff, and did not pass by the assignment. *Wallace* v. *Castle*, 14 Hun, 106; *Moore* v. *Hillabrand*, 37 Hun, 491; *Converseville Co.* v. *Chambersburg Woolen Co.*, 14 Hun, 609; *Baker* v. *Bank*, 100 N.Y. 31, 2 N. E. Rep. 452; *Sherwood* v. *Stone*, 14 N. Y. 267; *Bank* v. *Heilbronner*, 108 N. Y. 439, 15 N. E. Rep. 701. And the plaintiff was justified in making collections of the proceeds of its own goods, notwithstanding the fact that such

sales were made by the insolvent firm in its own name. And, where the proceeds came into the hands of the assignee, the plaintiff was entitled to have them paid over to it forthwith, and the right that the factor had to mingle such proceeds with the general fund of the estate did not belong to the assignee. *Merrill* v. *Thomas, supra.* We are therefore of the opinion that in this case commissions from the plaintiffs are due the substituted assignee; that he is entitled to credit for so much of the commissions as were allowed for guarantying payment upon collections; but that the plaintiff is entitled to set off and credit all commissions due said firm or its assignee against the amount due from Plummer & Co. Judgment is ordered accordingly, without costs to either party as against the other, as agreed upon by the parties hereto.