(31 Abb. N. C. 100; 7 Misc. Rep. 582.)

### GINDRE et al. v. KEAN.

(Common Pleas of New York City and County, Equity Term. March, 1894.)

1. FACTORS AND BROKERS—DEL CREDERE AGENT.
   The liability of a del credere agent to his principal for goods sold is that of a surety, only, and the purchaser is the primary debtor.
2. SAME—COURSE OF DEALING TO AFFECT ORIGINAL CONTRACT.
   The fact that a del credere agent, at times, remitted for goods sold by him before the price became due from the purchaser, does not show such a course of dealing between him and his principal as will alter the original relation, and render the agent primarily liable for goods sold by him, where the principal instructs him to make no more remittances before maturity.

Action by Claude Gindre and others against Cyrus V. Kean, as assignee for the benefit of creditors of Edward M. Benjamin, to recover moneys collected by defendant, subsequent to the assignment by him for the benefit of creditors, on account of goods sold by the assignor as a del credere agent for plaintiffs. Judgment for plaintiffs.

Stephen Van Wyck, for plaintiffs.
J. Hampden Dougherty, for defendant.

BISCHOFF, J. Pursuant to Gindre & Co.'s proposition of April 24, 1889, and accepted by Benjamin on the 7th of May following, the former were to consign the silks of their manufacture for sale; the latter to receive a commission of 6 per cent. upon the sales, for guaranty, storage, insurance, and all other expenses. That this constituted the parties principal and factor respectively is clear and con-

ceded. Gindre & Co.'s right, therefore, to repossess themselves of the goods consigned and remaining unsold at the time of Benjamin's assignment, and to insist upon payment to themselves of all moneys remaining at the time unpaid from the purchasers upon all sales effected by Benjamin for their account before his assignment, and to recover from Benjamin's assignee the specific moneys received by him from the purchasers on account of such sales, is indisputable, upon abundant authority. 2 Kent, Comm. (Lacy's Ed.) p. 623, etc.; Baker v. Bank, 100 N. Y. 31, 2 N. E. 452; Wallace v. Castle, 14 Hun, 106; Converseville Co. v. Chambersburg Woollen Co., Id. 609; Donovan v. Coonell, 3 How. Pr. (N. S.) 525; Manufacturing Co. v. Lincoln (Com. Pl. N. Y.) 11 N. Y. Supp. 75. It remains, therefore, to consider whether, by the course of dealing adopted by the parties, they had so far modified or changed their original agreement that their relation, upon a sale of the consigned goods, was divested of its fiduciary character, and converted into the ordinary one of creditors and debtor. Bank v. Hubbell, 117 N. Y. 384, 22 N. E. 1031.

Benjamin's del credere liability was wholly independent of any duty which devolved upon him as factor. As factor, merely, it was his duty, upon receipt of moneys for his principals' account, to remit the specific moneys paid him, and, until remittance, to keep the moneys distinct and separate and apart from his own. Before payment to him, his principals could at any time elect to revoke his agency, and insist upon payment from the purchasers to themselves. That he was answerable for the purchase price, under his del credere agreement, in the event of the purchaser's default in payment, did not operate to deprive his principals of the right to insist upon performance of his duty as factor. Notwithstanding the del credere agreement, the purchaser continued to be the principals' primary debtor, the factor's liability under such an agreement being that of a surety only. The principals could therefore pursue their remedies against the purchaser while the purchase price remained unpaid to the factor, or against the factor for the moneys paid him for their account, and were not confined to the del credere agreement, if remittance of the purchase price was omitted. 2 Kent, Comm. (Lacy's Ed.) p. 624; Story, Ag. § 33, note 4; Thompson v. Perkins, 3 Mason, 232, Fed. Cas. No. 13,972; Manufacturing Co. v. Lincoln (Com. Pl. N. Y.) 11 N. Y. Supp. 75.

It is contended for defendant that the course of dealing between Gindre & Co. and Benjamin had so far altered their original agreement that, upon a sale of the consigned goods by Benjamin, he became liable to his principals at once for payment, at fixed times and at fixed prices, without regard to the credits upon which, or the prices at which, the sales were made, and that, under this arrangement, Benjamin was constituted the primary debtor. Upon the evidence, however, I am unable to agree with the learned counsel for the defendant that Benjamin was accountable to Gindre & Co., upon a sale by him, at prices other than those at which the consigned goods were sold. It was claimed for defendant that one Molson, an employe of Benjamin, was authorized by Gindre & Co., whenever a sale was about to be effected, to determine the prices to be returned

and accounted for by Benjamin to Gindre & Co., and that the prices so determined, in many instances, differed from the prices at which Benjamin had actually sold, sometimes being greater, and at other times less; and testimony was adduced which tends to show that Molson had assumed to act as stated. The evidence is, however, insufficient to show that Gindre & Co. had invested Molson with such authority, or that they knew of any difference in the prices obtained and returned by Benjamin, and so that Gindre & Co. had ratified Molson's acts, or acquiesced in his exercise of authority. The acts and declarations of an assumed agent, alone, are incompetent to bind the alleged principal; and, in the absence of proper evidence, I cannot assume that, in the course of his business dealings with Gindre & Co., Benjamin, either with or without the knowledge or sanction of his principals, acted repugnantly to the duty which is ordinarily devolved upon a factor or other agent, namely, to account to his principals for the money actually received or agreed to be paid him upon a sale of the consigned goods. I shall therefore dismiss from my further consideration, in the determination of the question litigated in this action, the alleged fact that Benjamin was accountable to Gindre & Co. whenever a sale of the consigned goods was effected by him at prices fixed between them either before or contemporaneously with the sale, whether or not those were the prices actually realized.

It now remains to consider whether Benjamin was accountable to Gindre & Co. for the purchase price of the goods sold in advance of actual payment by the purchaser to him, or before expiration of the credit allowed upon the sale. It appears that, in the course of their business, Benjamin kept, and from time to time rendered to Gindre & Co., both an account sales and an account current. The account sales was rendered at least once in every month, and as often as Benjamin thought the aggregate amount of the sales made warranted it. This account sales matured 30 days after the expiration of the particular month in which the several sales were made. Upon maturity of the account sales, Benjamin remitted to Gindre & Co. the moneys actually received by him upon sales made by him, and such for which his liability had become definitive, under his del credere agreement, upon the purchaser's default, less the amount of his commissions; and for some time, also, he remitted for such of the sales in which the credits allowed to purchasers had not yet expired, and the purchase prices had not yet been paid, deducting for these, besides his commissions, a discount for the advances. The remittances were debited by Benjamin to Gindre & Co. in the account current, and they were credited therein for the purchase prices paid to Benjamin, and for such moneys as accrued from him, under his del credere agreement, for the purchase prices remaining unpaid at the expiration of the credits allowed. Because of the anticipatory remittances, it is urged, the agreement is inferable that Benjamin was bound to remit to Gindre & Co., at fixed times, without regard to payments to him or the terms of the sales effected by him, and that thus he was primarily liable for the purchase price whenever a sale was made by him. Hence, it is further urged, Gindre & Co. must share with other creditors of Benjamin in the distribution of the

assigned estate, and have no rights in the proceeds of the sales of their consigned goods which are superior to those of general creditors. The inquiry now is pertinent, was it Benjamin's duty to remit before payment of the purchase price to him, or before the credits allowed upon sales effected by him had expired and the purchasers were in default? Turning to Gindre & Co.'s proposition of April 24, 1889, they say to Benjamin:

"You will charge us with the customary discount of the market, which varies from five to six per cent., according to the values given, and count that you will only charge us the exact value given."

I do not regard it as by any means clear that Gindre & Co. thereby intended, or that Benjamin thereby understood, or was justified in understanding, that it was obligatory upon him, even if so required by Gindre & Co., to discount the account sales and remit accordingly. But, however that may be, it is indisputable that the agency created by the proposition and acceptance was revocable at the pleasure of Gindre & Co. They could, therefore, at any time, with Benjamin's approval, alter the terms of the agency, and, as altered, continue it. On January 22, 1892, Gindre & Co. wrote to Benjamin:

"In future, we do not wish to pay you any interest. In consequence, please do not make any remittances to us, except at maturity of account of sales, only for the sum that you find due us at the time. We will refuse all remittances made under other conditions."

To which Benjamin replied on February 5th following:

"I understand you to say that you only want a remittance when there is that amount to your credit, and that you do not want the account of sales discounted. I had contemplated sending you two or three thousand pounds sterling to-day, which I regret not doing on account of your letter not allowing it."

Here, then, we have Gindre & Co.'s explicit repudiation of Benjamin's obligation to remit, except as factor, for moneys actually received upon sales for his principals' account, and for such further amounts as would accrue from him, as surety, under his del credere agreement, and his acquiescence therein. Any inference, therefore, which is sought to be drawn from the course of business, to the effect that Benjamin became primarily liable for the purchase price upon a sale by him, is plainly repugnant to the facts in evidence. Thus, the case at bar is not only destitute of all evidence from which it may be made to appear, either expressly or inferentially, that Gindre & Co. did not intend to preserve their rights as principals against Benjamin as their factor, and against the purchasers of the consigned goods, but the evidence is plainly inconsistent with any such claim.

The principles which should control the decision of the case at bar, and which are to be deduced from the adjudged cases, are that whenever the agreement of the alleged principal and factor, whatever they may style themselves or their relation, and whether the agreement be express, or only inferable from the course of business, clearly manifests an intention that the alleged factor shall become definitively and primarily liable upon a sale for the purchase price of the goods consigned, it is, in legal effect, a sale by the alleged prin-

cipal to the alleged factor, out of which arises the ordinary relation of creditor and debtor.    The liability of the alleged factor under such an agreement is repugnant to that of a mere agent, whose duty to remit is commensurate only with the amount of the money which he has actually received upon a sale for his principal's account.    Ex parte White (In re Nevill) 6 Ch. App. 397; affirmed by the house of lords, sub nom. Towle v. White, 21 Wkly. Rep. 465; also cited at length in the text of Benjamin on Sales (section 598),—relied upon by defendant's counsel, is, upon the principle stated, distinguishable from the case at bar.    There it appeared that the consignee was permitted to manipulate the goods consigned to suit the purposes of his trade; that he was to be liable upon a sale by him at fixed rates, irrespective of the prices at which he had sold; and that he was, furthermore, to pay at fixed times, without reference to the fact of payment to him, or the terms upon which the sales were effected by him.    Lord Justice James remarked:

"If he [Nevill] was entitled to alter them, to manipulate them, to sell them at any price he saw fit after such manipulation, and was still liable only to pay for them at a price fixed beforehand without any reference to the price at which he had sold them, or to anything else than the fact that he had sold them in a particular month, it seems to me impossible to say that the produce of the goods so sold was the money of the consignors, or that the relation of vendor and purchaser existed between Towle & Co. [consignors] and the different persons to whom Nevill [consignee] sold the goods.  *  *  * It appears to me, therefore, to be the necessary conclusion that, as regards these transactions, Mr. Nevill was in the position of a person having goods 'on sale or return.' "

Lord Justice Mellish was of the same opinion, observing:

"But if the consignee is at liberty to sell at any price he likes, and receive payment at any time he likes, but is to be bound, if he sells the goods, to pay the consignor for them at a fixed rate and at a fixed time, in my opinion, whatever the parties may think, their relation is not that of principal and agent,  *  *  *  and, in point of law, the alleged agent, in such a case, is making on his own account a purchase from his alleged principal, and is again reselling."

Ex parte White (In re Nevill) was followed and approved in Nutter v. Wheeler, 2 Low. 346, Fed. Cas. No. 10,384, and Re Linforth, 4 Sawy. 370, Fed. Cas. No. 8,369; but in both cases the facts resembled those in the principal case, and were unlike those in the case at bar.    In Nutter v. Wheeler, it appeared, by the course of business between the alleged principal and agent, that the defendants were in the habit of sending goods manufactured by them to plaintiff's assignor for sale upon such terms and at such prices as the latter saw fit; he to remit to them, whenever a sale was made, at specified rates.    It was held that the facts constituted a sale to plaintiff's assignor, and that the ownership of the proceeds of the sale by him passed to the assignee of the insolvent agent.    The court stated that by the terms of the agency the consignee may be the agent of the consignor until the goods are sold, and, when they are sold, become, as between him and the consignor, the purchaser and principal debtor for the goods sold.    In Re Linforth, A. had agreed to supply B. with goods, less a certain discount.    B. was to pay all storage and other charges.    He

was also required to account for and pay over the proceeds of the sales made by him once in every three months, and at the end of the year, if A. should so require, to pay for all goods then remaining unsold. It was held that the parties were vendor and purchaser, and that, B. having become bankrupt, A. could not recover of his assignees the proceeds of sales effected by B. before his bankruptcy, which had come into the hands of his assignees. Plaintiffs are entitled to judgment for the relief demanded, with costs.