### ZIMMERMANN et al. v. WEBER.

(Supreme Court, Appellate Division, First Department.　December 30, 1909.)

1. BROKERS (§ 11*)—SALE OF STOCK—LIABILITY OF CUSTOMER.

Where defendant authorized stockbrokers to sell a certain amount of stock at a specified price and the brokers sold it in their own names, becoming personally liable therefor, and defendant refused to deliver the stock upon the buyer's demand, having sold it to others, and the price had risen, the buyer could buy the stock on the market, holding the brokers responsible for the difference between the price at which they agreed

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to sell and the price paid for the stock by the buyer, and defendant would be liable for such difference to the brokers.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 58; Dec. Dig. § 11.*]

2. BROKERS (§ 11*)—SALE OF STOCK—LIABILITY OF CUSTOMER.

The fact that the brokers gave defendant notice that they themselves would go into the market and purchase the stock at a stated time, unless defendant furnished it for delivery by them before that time, did not preclude their recovery; the brokers' buyer having himself gone into the market prior to that time and purchased the stock on the brokers' account, and demanded his damages, as he had a right to do.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 58; Dec. Dig. § 11.*]

Appeal from Trial Term, New York County.

Action by Leopold Zimmermann and others against Joseph Weber. From a judgment granting inadequate relief and an order denying a new trial, plaintiffs appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, LAUGHLIN, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

Benjamin N. Cardozo and M. B. & D. W. Blumenthal, for appellants. Louis J. Vorhaus, for respondent.

HOUGHTON, J. The plaintiffs are stockbrokers, and the jury found that the defendant directed them to sell for him 25 shares of stock of the Consolidated National Bank which he owned at the price of $160 per share. When the market price reached that figure, the plaintiffs sold such number of shares of stock, and notified the defendant that it had made such sale, and requested him to produce such stock for delivery to their customer. Between the time of the giving of the order to sell and the time when the plaintiffs sold, the defendant had sold his stock to other parties, and did not have it on hand to deliver, and refused to furnish the stock to enable the plaintiffs to carry out their bargain. The person with whom the plaintiffs had bargained to sell, having demanded delivery from the plaintiffs, and the stock not being forthcoming, went into the market and bought the 25 shares at $180 per share, and demanded that plaintiffs make him good for the difference between the price which they had agreed to sell and price which he was obliged to pay. This the plaintiffs did, and bring this action against the defendant to recover the amount of their loss. The learned trial court held that they had no right of action against the defendant except for their commissions in selling the 25 shares, which amounted to $3.12, but, for the purpose of determining whether they had that right of action or not, he submitted to the jury the question as to whether or not the defendant authorized the plaintiffs to sell his 25 shares of stock at $160 per share, and the jury by their verdict found that he so authorized them.

The verdict found by the jury established that the plaintiffs acted entirely within the authority given to them by the defendant in bargaining to sell 25 shares of the stock in question at $160 per share. The plaintiffs bargained with the purchaser in their own name as they had

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the right to do if they chose, and the purchaser properly looked to them to carry out their contract with him. The failure of the plaintiffs to carry out their contract resulted from the default of the defendant in carrying out his and in failing to furnish the stock which he had authorized them to sell for him. The market price rose, and, on failure of the plaintiffs to deliver, the plaintiffs' purchaser had the right to go into the market and buy the stock at the market price and to hold the plaintiffs who were the only persons he knew in the contract for his damage. The plaintiffs were justified in settling with the purchaser with whom they had bargained, for the loss which he had sustained, and, being authorized by the defendant to do what they did, it was incumbent upon the defendant to save them from the damage which they sustained. An agent may demand indemnity from his principal for expenses or damages incurred by him in the proper conduct of his agency. Story on Agency, §§ 339, 340; Howe v. Buffalo, N. Y. & Erie R. R. Co., 37 N. Y. 297; Brown v. Mechanics' & Traders' Bank, 16 App. Div. 207, 44 N. Y. Supp. 645; Bibb v. Allan, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819. In pursuance of the authority given by the defendant, the plaintiffs were justified in making the contract for the sale of the shares of stock at the price stipulated by the defendant, and in becoming personally responsible for the delivery of the same at the price agreed upon. Having become personally responsible and suffered loss thereby, the defendant should make them good.

The plaintiffs are not debarred from recovery because they gave notice to the defendant that they themselves would go into the market and purchase the stock on the 28th of June unless he furnished the same for delivery by them before that date. The purchaser from the plaintiffs, as he had a right to do, went into the market prior to that time, and himself purchased the stock on account of the plaintiffs, and demanded his damage. Whether the purchaser did in fact purchase at the market price, or what the market price was, was a question of proof. It might be that the person with whom the plaintiffs had bargained to sell purchased at too high a price because he paid more than the market price as the defendant claims. But whatever the damage which the plaintiffs suffered might have been the defendant was responsible therefor.

It follows that the judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event.

INGRAHAM, McLAUGHLIN, and SCOTT, JJ., concur.

LAUGHLIN, J. (concurring). Although at the time the sale was made by the brokers the customer did not have the stock, having sold it in the interim between authorizing the brokers to sell at a fixed price and the time the stock reached that price, yet the transaction did not constitute a short sale or give rise to the obligations that exist between the customer and the broker on a short sale, which on the part of the broker are to carry the transaction for a reasonable time by borrowing the stock on the customer putting up margins. White v. Smith, 54 N. Y. 522. The customer had the stock when he authorized the broker to make the sale, and it was understood that he would deliver

the stock when notified of the sale. In the absence of any subsequent agreement changing his liability, it was to furnish the stock immediately upon being notified by the brokers, so that they might deliver it to the purchaser, and, on his failure to do so, the obligation of the brokers to the purchaser doubtless was to purchase and deliver the stock. That being the liability of the brokers to the purchaser, the measure of damages for which the brokers were liable to him was what it would have then cost the purchaser to buy the stock elsewhere. That is not the theory upon which the brokers sought to recover. They apparently rested their case on the theory that the negotiations between them and the defendant relieved them of that obligation, and that the defendant undertook to provide the stock. If the brokers acquiesced in the offer on the part of their customer to provide the stock, they doubtless waived their right to an immediate delivery, and were not at liberty to purchase themselves or to consent to a purchase by the person to whom they made the sale until after the lapse of a reasonable time to enable the customer to procure the stock, or at least until a further demand upon the customer by which the latter's time to purchase the stock should be limited. This they undertook to do by the notice to the effect that in the event of the failure of the customer to deliver the stock at or before noon on the 28th day of June, 1907, the brokers would purchase it at that time for the account of the customer. On that theory of the case, it was the duty of the brokers to give the customer until that time to deliver the stock, and to refrain from purchasing it themselves and from consenting to a purchase by the person to whom they had made the sale. This they did not do, for the purchase was made with their consent on the 27th day of June, 1907. I therefore see no theory upon which they were entitled to recover on the basis of the purchase made on that day.