# James E. Mitchell Co. *v.* Hartsell Mills Co., Appellant.

*Contracts—Commission merchant—Factor — Sale — Buyer and seller—Principal and agent—Fraud—Damages—Measure of damages—Act of May 19, 1915, P. L. 543.*

1. Where a commission merchant contracts to take practically a manufacturer's entire output at a price fixed by the latter, plus a stated commission, and the goods are charged to the merchant, and delivered either to him or his customers, and the price is paid always and promptly by the merchant, who guaranteed the sales, and it appears that the orders are not subject to cancellation, and that there was no relation between the manufacturer and the merchant's customers, in an action by the merchant to recover damages for nondelivery of merchandise, the question whether the relation of the parties is that of buyer and seller, or of agent and principal, is immaterial, as the measure of damages for breach of the contract is the same.

2. In such case, the manufacturer cannot allege fraud on the part of the merchant because the latter sold some of the goods at a price in excess of that fixed by the seller, where it appears that, in every case where sales had been made in excess of the price fixed, equalizing sales had been made of other goods at a lower price, so that the seller was in no way injured.

3. Nor can fraud be established by proof that the merchant billed certain of the goods to customers at a price higher than that fixed by the contract, where it appears that although he actually received the higher price, he ultimately turned back the excess to the customer. In such case, the seller was in no way injured.

4. On breach of contract by the failure of the manufacturer to furnish the merchant goods contracted for, the latter is entitled to recover compensation for his loss to be measured by the difference, at the time of the breach, in market value of the goods the manufacturer had contracted to furnish, and the contract price it agreed to accept, and such is the case, where, in order to fill its contracts, the merchant has delivered merchandise to customers which it had

on hand, which had cost it less than the market price at the time of the breach. The merchant's delivery of such merchandise against contracts that should have been filled by the manufacturer cannot enure to the latter's benefit, as this would enable it to take advantage of its own default and penalize the merchant.

Argued January 10, 1923. Appeal, No. 88, Jan. T., 1923, by defendant, from order of C. P. No. 1, Phila. Co., March T., 1920, No. 433, dismissing exceptions to report of referee in case of James E. Mitchell Co. v. Hartsell Mills Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SCHAFFER, JJ. Affirmed.

Foreign attachment for failure to deliver yarn.

The opinion of the Supreme Court states the facts.

Exceptions to report of Geo. W. Pepper, Esq., referee, awarding plaintiff $18,003.35.

Exceptions dismissed. Defendant appealed.

*Error assigned,* inter alia, was order, quoting record.

*Joseph R. Embery,* for appellant.—No one can be an agent to sell and a purchaser for himself without the intelligent consent of his principal: Beeson v. Beeson, 9 Pa. 279; Rich v. Black & Baird, 173 Pa. 92.

Plaintiff violated its duty of good faith to defendant and made secret profits.

The court erred as to the measure of damages: Iron Trade Products Co. v. Wilkoff Co., 272 Pa. 172; Hauptman v. Penna. W. Home for Blindmen, 258 Pa. 427.

*Lewis Lawrence Smith,* with him *George Vaughan Strong,* for appellees.—The transactions were sales: Seyfert v. Herron, 11 W. N. C. 72; Braunn & Fitts v. Keally, 146 Pa. 519; Heryford v. Davis, 102 U. S. 235; Sheffer v. Montgomery, 65 Pa. 329.

Plaintiff did not fail in the performance of any duties which would preclude recovery.

The measure of plaintiff's damages is the difference between the contract price and the market price at the time of defendant's refusal to make delivery.

OPINION BY MR. JUSTICE SCHAFFER, February 12, 1923:

This appeal presents a somewhat voluminous record. To review it in its entirety in this opinion would serve no useful purpose so far as the decision of the legal controversies submitted to us are concerned. They, and the facts giving rise to them, have been passed upon by a very able referee whose report has been confirmed by the court below. A painstaking consideration of everything in the case and a careful study of the brief of appellant's counsel, with the earnest oral argument made by him in mind, has not convinced us that the determination reached is wrong. While much testimony was taken and a number of questions are raised under the eighty assignments of error, an analysis of the record shows these as its salient features:

Plaintiff (appellee) is an incorporated commission merchant engaged in the sale, among other commodities, of cotton yarns, of which defendant (appellant) is a manufacturer. Through a course of dealing, not resulting from any specific contract disclosed by the testimony, but understood and acted on by the parties, the former undertook to sell practically the entire output of the latter's mill and to guarantee the sales. The persons to whom the merchandise was sold by plaintiff were its customers, and defendant had no direct dealing with them at all. When plaintiff received an order, it notified defendant of it (without disclosing who the purchaser was) and the price, which appellant accepted, plaintiff then closed a binding contract with its customer and defendant shipped the yarn to plaintiff, or to the customer direct, in pursuance of shipping directions from plaintiff, and immediately drew on plaintiff for the price fixed, less a commission, or, as found by the referee, "dealer's discount," of 5%, and a further reduction of 3% for pay-

ment within ten days. Plaintiff's profits were limited to these two percentages off the price. As soon as the goods were shipped, defendant charged them on its books to plaintiff and not to the customer. Appellee promptly paid for the goods on presentation of the drafts, in some instances before receipt of the merchandise. As between plaintiff and defendant, the orders were not subject to cancellation.

Defendant defaulted in the delivery of a considerable quantity of the material ordered from it by plaintiff on running contracts, due at least in part to defendant having sold elsewhere on a rising market, and plaintiff brought this suit to recover damages for the loss it sustained as a result of the breach of the contract, claiming to be the purchaser of the yarns. Defendant denied plaintiff was a purchaser, set up that their relation was that of principal and agent, and counterclaimed for a large sum alleged to be due as a result of the plaintiff's fraud and bad faith in making certain secret profits. The referee to whom the case was submitted found in plaintiff's favor, that it was a purchaser, not an agent, that there was no bad faith, denied appellant's counterclaim and recommended judgment in plaintiff's favor, which the court below entered and from which defendant has taken this appeal.

All of the orders given by plaintiff to defendant for the yarns were in writing and in the same form, stating "We have taken the following order for your account." No memoranda were sent by plaintiff to defendant of the person to whom the merchandise was sold. The invoice or bill sent to appellee by appellant when the goods were shipped in most instances stated the yarn was "sold to James E. Mitchell Co." With the invoice, defendant sent a written calculation of the amount due on the shipment, which was the contract price less the two allowances of 5% and 3%. In each instance, before communicating with defendant, plaintiff had a definite order from a customer at a fixed rate. The referee found, "The defendant

was entitled to receive and keep the purchase money, irrespective of whether the plaintiff did or did not complete the transaction with the purchaser and irrespective of whether or not the plaintiff could collect the price" from him. When the yarn delivered by defendant to plaintiff came into the latter's possession, it was stored by plaintiff in its storehouse in expectation of delivery to the customer.

The form of order made by plaintiff would give rise to the inference that it was an agent of defendant, whereas it is now claimed to be a purchaser; and the bill or invoice sent by defendant to plaintiff stating that it had "sold" the merchandise to plaintiff, coupled with the circumstance that the shipment was immediately charged against plaintiff on defendant's books, and was in fact paid by plaintiff without reference to whether collections were made from the customer or not, would lead to the conclusion that the defendant regarded the transaction as a sale, although it is now setting up that the plaintiff is its agent. Appellant also gives color to the inference that appellee was a purchaser by its letters in which it speaks of yarn "sold" to appellee and yarn "due" and "owing" to it. As further evidencing appellant's own understanding of its obligation to deliver, after the breach, and when it and appellee had ceased to do any new business with each other, it not only made shipments to appellee, but admitted it was bound to make shipments on the orders received. Summing up the situation, as disclosed by the course of conduct of the parties, the referee finds: "In general it may be said that the course of dealing between the parties was marked by some of the features characteristic of the relation between vendor and vendee and by some of the features which are usually distinctive of a fiduciary relation such as that of principal and agent." His determination was "that the transaction disclosed by the record was essentially a sale by the defendant to the plaintiff and a resale by the plaintiff to an ultimate purchaser, that title to the

merchandise passed from the defendant to the plaintiff and that the dominion of the plaintiff over the merchandise in his possession was an owner's dominion subject only to such practical restrictions as were made necessary by a limitation of the profits of resale" to 5%. To sustain the referee's position, appellee's counsel rely upon the principle announced in 23 Ruling Case Law 1218, section 35, summing up the cases from many jurisdictions, If a liability to pay a fixed price for the goods or their reasonable value arises at the time of the consignment, the transaction is usually regarded as a sale, transferring the title to the consignee"; and elaborated in Gindre v. Kean, 28 N. Y. Supp. 4, 7, where it is said: "The principles which......are to be deduced from the adjudged cases, are that, whenever the agreement of the alleged principal and factor, whatever they may style themselves or their relation and whether the agreement be express or only inferable from the course of business, clearly manifests an intention that the alleged factor shall become definitely and primarily liable upon a sale for the purchase price of the goods consigned, it is, in legal effect, a sale by the alleged principal to the alleged factor, out of which arises the ordinary relation of creditor and debtor. The liability of the alleged factor under such an agreement is repugnant to that of a mere agent, whose duty to remit is commensurate only with the amount of the money which he has actually received upon a sale for his principal's account." He also points to our own cases of Seyfert, McManus Co. v. Herron, 11 W. N. C. 72, and Braunn & Fitts v. Keally, 146 Pa. 519.

To our minds, in view of appellant's contention that appellee was its agent and guilty of fraud and bad faith, it really does not matter whether plaintiff be treated as a purchaser or not, because defendant did not succeed in establishing the former's bad faith. Appellant admits in its brief that the controlling facts are not in dispute. The inferences to be drawn from them do not indicate to us bad faith at all.

Plaintiff, with defendant's entire acquiescence, had entered into binding contracts to supply yarns to others at a price agreed to by defendant, and the latter's failure to deliver subjected plaintiff to liability to those to whom it had made commitments. In every transaction, plaintiff ordered yarns from defendant only after it had a binding order from a customer. For purposes of its own, perhaps to hold customers for defendant's yarns, plaintiff was limited in its profit to 5% of the sales price, and it is not apparent in any instance that it received more than 5% and the 3% for prompt payment.

On the allegation of bad faith and upon the theory of agency, which we will adopt for the purpose of demonstration, defendant sets up the two following circumstances as showing breach of duty which precludes recovery by plaintiff and establishes its (defendant's) counterclaim: (1) That plaintiff refused to permit appellant to inspect its files or furnish defendant with a copy thereof showing transactions in the orders under which deliveries were uncompleted, and (2) that plaintiff violated its duty of good faith and made secret profits. As to the first, it is sufficient to observe that plaintiff permitted an expert accountant employed by defendant to thoroughly examine its books and all transactions connected with the sale of defendant's yarns. While there may have been some denial of full information on the first development of friction between the parties, it was not persisted in and defendant was afforded full opportunity to get any information it desired. As to the alleged fraud and misconduct, defendant bases this charge partly upon the fact that the plaintiff dealt with defendant's yarns as if it were the owner. As this was plaintiff's claim and as defendant gave color thereto by the incidents we have pointed out above, we think no bad faith is manifested by this circumstance.

Defendant's main contention is that plaintiff made secret profits. Failing to convince us as to this, it fails entirely, because, assuming the agency, if no secret

profits were made and defendant received all it was entitled to, then plaintiff was damaged by the refusal of appellant to make deliveries. It is set up that these secret profits were made (a) in connection with yarn taken over by plaintiff from Joseph H. Parvin, (b) on yarns shipped by defendant to plaintiff at Philadelphia in pursuance of orders received from plaintiff, and (c) on yarns shipped direct to customers under orders received from plaintiff.

The situation relative to the yarn taken over from Parvin and that shipped direct to plaintiffs is so substantially the same that they may be considered together. When business started between plaintiff and defendant, the former took over from Parvin, who prior to that time had been selling defendant's yarns, about 150,-000 pounds of them, which he had either bought from defendant or against which he had made advances. As this yarn was sold by plaintiff, it was delivered to its customers for a price reported and satisfactory to defendant, who received payment therefor. This was not, as defendant contends, a transaction in which the merchandise had been consigned by defendant to plaintiff without previous order. When plaintiff obtained an order from a customer for yarn which could be filled out of the Parvin stock, the price was submitted to appellant, and, when approved, the sale to the customer was completed, appellant drew against plaintiff for the amount due and the draft was paid.

As to this yarn and yarn which was shipped direct to plaintiff on orders which it had received, a situation arose which without explanation might give color to the assertion that plaintiff had made a secret profit but which analysis shows it had not. In some instances, as to the Parvin yarn and the yarns shipped to plaintiff, it appeared plaintiff had delivered the yarns to customers at a higher price than it had reported to defendant. In each sale, where this took place, it arose out of business necessity and was due to the instant require-

ment of customers for yarn, sometimes caused by appellant's delay in delivery. When yarn thus went to a customer at a higher price than that reported to defendant, a corresponding amount of yarn was delivered to other customers at a lower price than that reported to defendant. To illustrate, if plaintiff had an order for yarn at thirty-six cents a pound and had received yarn from defendant on a previous order at thirty-five cents a pound and the thirty-six-cent customer was anxious for delivery, plaintiff would deliver the thirty-five-cent yarn to the thirty-six-cent customer and when the thirty-six-cent yarn was received, would deliver it to the thirty-five-cent customer. At first blush and without complete investigation, this might give rise to the impression of a higher price received than reported. As to these transactions, the referee found: "It is commercially unreasonable and therefore legally unjustifiable to hamper a merchant in the plaintiff's position by a requirement that he shall individualize every package of yarn received by him, appropriate it only to the customer in whose order its number appears and account for it specifically to the manufacturer. It may be objected that unless restricted in this way the merchant may take advantage of the manufacturer and, by fraudulent cancellations and otherwise, enable himself to resell at figures in excess of the stipulated commission. Granted that the merchant might take advantage of the situation, it is sufficient to observe generally that the possibility of abuse is not great enough to justify the certainty of inconvenience and that, in the particular case now before the referee, there is no evidence whatever that any such abuse occurred." With reference to this transaction, the referee further found: "It appears that in many instances packages of yarn, delivered to the plaintiff by the defendant under an order specifying a certain price, were in fact turned over by the plaintiff to customers under a contract calling for the same grade of yarn at a higher price and that such higher price was actually collected from the custo-

mer by the plaintiff. On the other hand, it is not success-fully disputed by the defendant that in all such cases equalizing deliveries of higher priced packages were made by the plaintiff to the customers buying at the cheaper rate. Upon this state of facts, the defendant contends that nothing is relevant except the fact that the plaintiff collected more money for certain packages than the plaintiff accounted for to the defendant. The plaintiff contends that such excess collections become legally immaterial if and when balanced by collections of correspondingly less sums upon the delivery of certain other packages. After a careful review of all the testimony, the referee is unable to discover any evidence that would justify a finding that the plaintiff has made any profit at the expense of the defendant in excess of the 5% dealer's discount and the 3% discount for prompt payment. The burden is upon the defendant to show that the plaintiff retained more than he was entitled to and, in view of the course of business, he does not discharge this burden by picking out isolated transactions in which yarn bought at a specified price was actually used to fill a contract made at a higher price. The very fact that the purchaser at the lower price received his yarn and paid for it shows that both contracts were performed to the satisfaction of both purchasers; and this in turn means that the aggregate price collected from the two and accounted for to the defendant was in fact the price which the defendant had charged for the two lots. The reason is twofold why in actual practice the plaintiff did not always deliver to a given customer the very package of yarn which had been purchased to supply such customer's need. In the first place, the pressure of customers for delivery of yarn did not always correspond to the sequence of their orders. Sometimes a customer for whose requirements yarn had been received by the plaintiff was not ready to take it while another customer who had ordered the same grade of yarn was clamoring for delivery before his consignment had arrived.

Under such circumstances, it was reasonable that the plaintiff should allot the yarn on hand to the customer who was ready for it and use the later consignment to satisfy the needs of the customer who was content to wait. If the two consignments had been sold at different prices, it was enough for the defendant that the aggregate stipulated prices were paid by the plaintiff less a commission and discount."

Our examination of the record convinces us that the referee's disposition of that branch of the case, which applies to the Parvin yarns and those which were shipped to plaintiff in Philadelphia, was correct.

This leaves for consideration, on the question of good faith, certain transactions, where the goods were shipped by defendant direct to customers and where a higher ultimate price was paid by the person who finally received the goods than that reported to defendant. The facts connected with these transactions are, that plaintiff received orders from one Prendergast and one Haggstrom for yarns at certain prices which were reported to defendant and acquiesced in by it; these purchasers (for such the referee found them to be, and nothing shown to us leads us to conclude otherwise) directed plaintiff to ship the yarns to other persons to whom they had resold them, and to bill them at a higher price (in the case of Haggstrom to banks in which credits had been established by foreign customers to whom he had resold the yarn) which higher price was received by plaintiff; it did not, however, retain this sum, but turned all that it received above the the price reported to defendants over to Prendergast and Haggstrom. We fail to see how defendant was injured by this. It admits plaintiff did not directly profit by these transactions, but insists that the difference in price between what was reported to it and what was paid by the ultimate receiver of the yarns was in effect a commission paid by plaintiff to Prendergast and Haggstrom, was therefore an expense of selling and should come out of the commission of 5% payable to

plaintiffs. This contention is disposed of by the referee in his finding that Prendergast and Haggstrom were purchasers of the yarns and with this we agree. There was no lack of good faith in these transactions.

Having determined there was no bad faith or fraud on plaintiff's part and that in view of this the question of whether plaintiff was a purchaser from defendant or its agent is unimportant, we now come to the only remaining question, that of the measure of damages. In considering it, we are not disturbed by two factors which might give rise to difficulty, the date of the breach and the market value at that time. The referee adopted April 9, 1918, which was the date defendant alleged as being that of its refusal to deliver, as the date of the breach, and accepted defendant's statement of the market value as of that date in fixing the damages.

The referee awarded damages to plaintiff on the basis of its being a purchaser, to whom defendant's refusal to make delivery brought about a loss of the difference between the market value of the yarn, at the time of the breach, and the contract price, following the rule laid down in Hauptman v. Penna. Working Home for Blind Men, 258 Pa. 427, where we held that, upon a breach of contract by a vendor in failing to furnish his vendee goods contracted for, the latter is entitled to recover compensation for his loss to be measured by the difference in market value of the goods the vendor had contracted to furnish, and the contract price he had agreed to accept, and that such is the measure of damages, whether the vendee has purchased goods to take the place of those the vendor was to furnish or not.

Defendant contends that this measure of damages is improper, because, in certain instances, plaintiff delivered yarn which it had on hand to customers in fulfillment of their orders, which yarn had cost plaintiff less than the market price at the time of the breach. If plaintiff delivered yarn which it had on hand against contracts which should have been filled by defendant's

yarn, the latter is not entitled to the benefit of the price at which plaintiff acquired it. To give appellant this benefit would enable it to take advantage of its own default in order to penalize plaintiff. Admittedly this yarn which plaintiff had on hand had a higher value at the time of appellant's breach than the price plaintiff paid for it. Its value was the market value of such yarn. If plaintiff chose to use it for deliveries on contracts which it was bound to fill this could not justly enure to appellant's advantage, it being in default in deliveries. The measure of damages adopted by the referee follows not only our rule laid down in the case cited, but the provisions of the Sales Act of May 19, 1915, P. L. 543, Stewart's Purdon's Digest, page 7483, section 69, which stipulates that where the seller wrongfully neglects or refuses to deliver the goods "The measure of damages is the loss directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract," and "Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

Whether the parties be treated as purchaser and seller or as agent and principal, under the facts here appearing, that in reliance on defendant's undertaking to deliver, plaintiff had entered into binding contracts of sale with its customers, which it had guaranteed, which sales were not subject to cancellation by it and if it had refused to receive the yarn it would have been liable to defendant for any loss sustained, the measure of damages is the same, and is not the usual measure of damages as between agent and principal where the former sues for breach of contract to deliver and his only loss is the loss of commissions. In the Hauptman Case (258 Pa.

427) the plaintiff was a commission merchant and examination of the record shows that the merchandise, failure to deliver which gave rise to the suit, was to be delivered in most instances, not to plaintiff, but, as here, to his customers. There, as in this case, the commission merchant had entered into a binding contract to take and pay for the goods, because here, having given the order which was not subject to cancellation, defendant was bound to take the merchandise and pay for it, or, failing to do so, be compelled to meet it, in an action to recover the loss.

The principle covering plaintiff's right to recover, and the measure of his damages, is the same as laid down in cases where a broker has sold stock and his principal has refused to deliver it, in which it is held that the broker has a cause of action against his principal, for the difference in the price at which the stock was sold, and the price at which the broker bought "to cover": Maitland v. Martin, 86 Pa. 120; Bibb v. Allen, 149 U. S. 481; Sistare v. Best, 88 N. Y. 527; Zimmerman v. Weber, 135 N. Y. App. Div. 428, 120 N. Y. Supp. 483; Bank of Bisbee v. Graf, 12 Ariz. 156, 100 Pacific R. 452; Bailey v. Carnduff, 14 Colo. App. 169, 59 Pacific R. 407. See also Searing v. Butler, 69 Ill. 575, and Dozier v. Davison & Fargo, 138 Ga. 190.

Our conclusion being that the case was rightly decided by the referee and the court below, it follows that all the assignments of error must be and they are overruled, and the judgment is affirmed.