## Townsend-Whelen & Co. v. Craig.

*Duane, Morris & Heckscher*, for rule; *H. M. Schell*, contra.

SMITH, J., Nov. 7, 1928.—This is a rule for judgment for want of a sufficient affidavit of defense.

On Dec. 17, 1927, the defendant instructed his agent, Provident Trust Company of Philadelphia, to sell for his account ten shares of stock, par value $25, of the Continental Insurance Company, at market. On the same day, Provident Trust Company instructed the plaintiffs, Townsend-Whelen & Co., licensed stockbrokers of Philadelphia, to sell these shares. The Continental Insurance Company was listed on the New York Stock Exchange. On the same day, the plaintiffs instructed their New York correspondent to sell these shares of stock at market. They were sold at $296.75 per share. The plaintiffs then sent a confirmation of the sale to Provident Trust Company, which confirmation recited that it was agreed between broker and customer that all transactions are subject to the rules and customs of the New York Stock Exchange. Prior to Dec. 12, 1927, the Continental Insurance Company voted to increase its stock from $10,000,000, par value $25 per share, to $15,000,000, par value $10 per share, and declared a stock dividend of 50 per cent. of stock, par value $10 per share, "payable December 30, 1927, to stockholders of record December 12, 1927," which stock dividend amounted to twelve and one-half shares on defendant's above-mentioned stock. On Dec. 10, 1927, the New York Stock Exchange issued a ruling to its members that on and after Dec. 12, 1927, the stock of the Continental Insurance Company would not be quoted ex-dividend, but that all deliveries of such stock must be accompanied by a due bill assigning to the purchaser the stock dividend in question. In making the sale, Clark, Dodge and Company, to comply with such ruling, delivered other Continental Insurance Company stock which they had in their possession, together with a due bill executed by them as required, and the price of $296.75 per share was the price obtained for such sale, which price, less commission, was remitted by plaintiffs to Provident Trust Company and by it credited to defendant.

On Dec. 19, 1927, defendant, through Provident Trust Company, delivered to plaintiffs his certificate for ten shares of the old stock of Continental Insurance Company, par value $25, endorsed in blank. On Jan. 6, 1928, Clark, Dodge and Company demanded of the plaintiffs delivery of the twelve and one-half shares of stock dividend on defendant's stock and plaintiffs made demand of the same of the defendant through Provident Trust Company. Defendant refused to make such delivery, although he had received this stock

dividend. It is the contention of the defendant that, since he had not been informed of the ruling of the New York Stock Exchange, he had the right to retain the stock dividend. The plaintiffs, to make good the sale under the Stock Exchange ruling, purchased twelve and one-half shares of such stock on the open market for $995.31, and it is in this amount that they make claim against the defendant.

There is no dispute upon any question of fact, so this question may be properly decided upon the pleadings. The vital question is: Was this defendant bound by the special ruling of the New York Stock Exchange? His instructions were to sell the ten shares of the Continental Insurance Company stock at market. The defendant contends that prior to the sale the plaintiffs did not advise him or Provident Trust Company of the ruling of the New York Stock Exchange, and that if they had he would not have sold his stock.

The only place where this stock could be sold was on the New York Stock Exchange. The customs, usages and rulings of stock exchanges are binding upon those trading or doing business therein. In 4 Ruling Case Law, page 263, paragraph 15, it is stated: "When one employs a broker to negotiate the sale or purchase of stocks or staple commodities in a particular market or exchange, he is deemed in the eyes of the law to intend that the mode of performance shall be in accordance with the established customs and usages of such market or exchange so long as the course of trade and the regular usage of business therein is neither immoral, unlawful, nor unreasonable, nor contrary to the express agreement of the parties. So conclusive is this presumption that the principal is bound by it, irrespective of his familiarity with, or ignorance of, such customs and usages. The reasoning underlying the seeming harshness of such a rule is that when a client employs a broker to transact business for him upon a certain exchange, he necessarily clothes him with sufficient authority to carry it through, and as the broker can only discharge the purpose of his employment by conforming to the rules and usages of the exchange, it naturally follows that he must be authorized to do so. Consequently, if a client sees fit to confer such authority without first informing himself as to such rules and usages, he is thereafter estopped from pleading his ignorance of them." The averment of the defendant that he had no knowledge of this ruling of the New York Stock Exchange is no defense.

In Snellenburg v. Levitt, 282 Pa. 65, Frazer, J. (on page 69), said: "Defendant also avers he had no personal knowledge or means of knowledge of the amount of commissions earned by him during his employment, that such knowledge is in the exclusive control of plaintiff, and, further, that he is informed and believes and expects to be able to prove on the trial of the case that plaintiff did not allow him the rate of commission provided in the contract. Assuming he did not have the means of knowing the exact amount of commissions he had earned, it was his duty, under Buehler v. United States Fashion Plate Co., 296 Pa. 428, to make inquiry of plaintiff to obtain the necessary information. Had such demand been made and plaintiff refused the information, defendant would then have been in a position to aver that he had exhausted all sources of knowledge open to him for the purpose of determining the truthfulness of his averments and that he believed, from his general knowledge of the matter, that the amount was incorrect and expected so to prove at the trial of the case. He failed to do this and contented himself with general averments of lack of knowledge of the matter. This was insufficient to prevent judgment. As a matter of fact, it is apparent his real defense was based on the construction of the contract rather than on any

dispute as to the items going to make up the account: Montgomery *v.* Lindsay, 44 Pa. Superior Ct. 516."

The stock dividend had been issued prior to Dec. 12, 1927, and payable on Dec. 30, 1927. It was, therefore, subject to the ruling of the New York Stock Exchange.

The burden was upon the defendant to have placed any condition or restriction upon the sale of this stock. Having failed to do so or to make inquiry of the broker authorized to sell the same to ascertain if there was any ruling of the Exchange which would affect or regulate the sale of this particular stock, he is bound by such ruling made thereon. Were this not so, it would be impossible to carry on the efficient and practicable operation of any stock exchange where a considerable volume of business is done daily in the purchase and sale of many kinds of securities upon orders from distant cities.

The principle is established that where a broker has sold stock for his principal and the latter has refused to deliver it, the broker has a valid claim for the difference in price at which the stock was sold and the price on the market at which the broker bought "to cover:" Mitchell *v.* Hartsell Mills Co., 276 Pa. 439.

An examination of the affidavit of defense shows that it raises no issue of fact. Therefore, the rule for judgment for want of a sufficient affidavit of defense is made absolute.